IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAJUAN DANTZLER, SR., | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-4769 |
| | : | |
| KYLE RUSSELL, *et al.* | : | |
| *Defendants.* | : | |

## MEMORANDUM

**Pappert, J.**                                                                                                                            **March 14, 2024**

On December 1, 2023, Dajuan Dantzler, Sr., a prisoner incarcerated at Lehigh County Jail, commenced this *pro se* civil rights action by filing a Complaint pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1.) On January 22, 2024, Dantzler filed an Amended Complaint ("Am. Compl.").[1] (*See* ECF No. 6.) Dantzler has also filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4) and a Prisoner Trust Fund Account Statement (ECF No. 5). Because it appears that Dantzler cannot afford to pre-pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Court will dismiss his Amended Complaint in part with prejudice

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (holding that "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings"). Consequently, Dantzler's Amended Complaint (ECF No. 6) is the governing pleading in this case.

and in part without prejudice. Dantzler will be given an opportunity to cure the noted deficiencies in certain claims by filing a second amended complaint.

I[2]

Dantzler names the Lehigh County Jail and its Warden, Kyle Russell, as Defendants. (Am. Compl. at 1.)[3] Russell is sued in his individual and official capacities. (*Id.*)

Dantzler avers that he is a federal prisoner confined to the jail awaiting sentencing. (*Id.* at 4.) He alleges violations of his First and Eighth Amendment rights, primarily asserting that Warden Russell and the Deputy Warden turned off the water throughout the jail on November 9-11, 2023. (*Id.* at 4.) Dantzler alleges that he was without running water and showers for two days and was unable cleanse himself to practice his religion, Islam, by offering salat.[4] (*Id.* at 4-5.) He further alleges that the use of his communication tablet was restricted during this period rendering him unable to communicate with family, and he was forced to eat all his meals in his cell with human waste in the toilet. (*Id.*) Dantzler asserts that he "was told by correctional officers that someone died from an overdose" and "[t]he Warden made the decision to cut off the water." (*Id.* at 5.) Dantzler seeks monetary damages for these alleged "unhuman, cruel and unusual conditions." (*Id.*)

---

[2] The factual allegations are taken from Dantzler's Amended Complaint.

[3] The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF system.

[4] Although not specifically explained in the Amended Complaint, it appears that salat is the term used by Muslims for daily ritual prayer. *See, e.g., Jackson v. City of Philadelphia*, No. 11-6604, 2014 WL 4105977, at *1 (E.D. Pa. Aug. 20, 2014).

II

The Court will grant Dantzler leave to proceed *in forma pauperis* because it appears that he is incapable of pre-paying the fees to commence this civil action.[5] Since Dantzler is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted), *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Dantzler is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se*

---

[5] However, as Dantzler is currently incarcerated, he will be obligated to pay the full amount of the filing fee in installments as required by the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "'cannot flout procedural rules — they must abide by the same rules that apply to all other litigants.'" *Id.*

### III

The Amended Complaint reflects Dantzler's intention to raise civil rights claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A

Dantzler's claims against the jail are not plausible. A § 1983 claim asserted against a prison or jail is not plausible because a prison or jail is not a "person" under Section 1983. *Coward v. City of Philadelphia*, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021) (citing *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014

WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014)). The Court will dismiss Dantzler's claims against the jail with prejudice.

B

Dantzler asserts several claims against Warden Russell regarding the conditions of his confinement at the jail. Pretrial detainees in federal custody are protected from "punishment" by the Due Process Clause of the Fifth Amendment.[6] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Seiter*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *cf. Edwards v. Northampton Cnty.*, 663 F.

---

[6] Dantzler asserts that he is a federal prisoner in "Federal Holding" awaiting sentencing. (Am. Compl. at 4.) As a "convicted inmate awaiting sentencing," Dantzler's status is that of a pretrial detainee. *Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir. 2000).

5

App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

      Dantzler alleges that he was forced to eat in his cell and was deprived of running water for two days. He also alleges that he was denied showers and communication with family during this period. Dantzler's allegations do not support an inference that the deprivations were sufficiently serious or that any prison staff were deliberately indifferent to inmate health or safety. With respect to the water shutoff, allegations that there was no running water, without more, are not sufficient to state a claim. Dantzler has not alleged whether, during the water shut off, he was denied any access to water for cleaning or drinking or whether he was otherwise denied basic necessities. *Compare Collier v. Adams*, 602 F. App'x 850, 852 (3d Cir. 2015) (*per curiam*) (concluding there was no violation where prisoner's water was shut off for 77 hours, but other fluids were available to him) with C*havarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 228-29 (3d Cir. 2015) (holding that a complete lack of potable water for three days "other than water in a toilet bowl . . . poses a clear 'substantial risk of serious harm' to an inmate." (quoting *Farmer*, 511 U.S. at 833-34)). Absent additional details and context related to the water shut off, and whether he was completely denied access to water during that two-day period, Dantzler has not adequately stated a plausible claim based on the deprivation of water.

      Dantzler has also not plausibly alleged a claim based on the deprivation of showers for a two-day period. His allegations do not support an inference that the

deprivations were sufficiently serious, that he was harmed by the deprivations, or that any prison staff consciously disregarded a serious risk to Dantzler's health or safety. *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (*per curiam*) (concluding that denial of showers for fifteen days did not violate Eighth Amendment when inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); *Thomas v. SCI Graterford*, No. 11-6799, 2014 WL 550555, at *5 (E.D. Pa. Feb. 12, 2014) (concluding that denial of cleaning supplies for a two-week period was not sufficiently serious to satisfy the objective component of an Eighth Amendment claim); *see also Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) (concluding that whether plaintiff suffered harm was critical to determination of whether unsanitary conditions were unconstitutional).

Courts have also held that the practice of requiring inmates to eat in a cell containing a toilet does not violate the constitution. *See Herb v. Dauphin Cnty. Prison*, No. 12-1402, 2012 WL 3062225, at *2 (M.D. Pa. July 26, 2012) ("Albeit distasteful, being required to eat in his cell under such conditions [i.e., where a foul ammonia odor from the toilet caused plaintiff's eyes to burn] does not amount to an Eighth Amendment deprivation."); *Mestre v. Wagner*, No. 11-2191, 2012 WL 299652, at *3 (E.D. Pa. Feb. 1, 2012) (no constitutional violation where prisoner was required to eat in cell where there was a toilet); *Walters v. Berks Cnty. Prison*, No. 11-6357, 2012 WL 760849, at *1 (E.D. Pa. Mar. 9, 2012) (allegations that plaintiff had to sleep and eat next to a toilet while incarcerated at the Berks County Jail failed to state a claim); *Flores v. Wagner*, No. 11-1846, 2011 WL 2681596, at *5 (E.D. Pa. July 8, 2011) ("Requiring an inmate to eat in a cell a few feet away from a toilet is insufficient to

implicate a conditions of confinement claim that is repugnant to contemporary standards of decency."); *Smith v. U.S. Penitentiary Lee*, No. 11-77, 2011 WL 767165, at *2 (W.D. Va. Feb. 25, 2011) (plaintiff failed to state claim based on allegations that he was required to eat meals in cell with toilet sometimes filled with excrement); *Caldwell v. Cabarrus Cnty. Jail*, No. 12-586, 2012 WL 2366451, at *2 (M.D.N.C. June 21, 2012) ("[H]aving to eat in a cell with an unflushed toilet" does not violate the constitution), *report and recommendation adopted*, No. 12-586, 2013 WL 1344452 (M.D.N.C. Apr. 2, 2013). The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Though a requirement that he eat meals in his cell may be "restrictive" or "harsh," it is merely an element of prison life, not an unconstitutional condition of confinement. *Id.* at 347.

Furthermore, Dantzler's claim based on the deprivation of communication with his family for a 2-day period does not violate the constitution. *See Castillo v. FBOP*, No. 05-5076, 2006 WL 1764400, at *6 (D.N.J. June 23, 2006) ("Indeed, telephone and visitation contacts do not qualify as minimal life's necessities, such as adequate food, clothing, shelter, sanitation, medical care and personal safety."). To the extent that Dantzler asserts a First Amendment claim based on his inability to make telephone calls, such claim is also not plausible as pled. Although prisoners may have a limited First Amendment right to communicate with family and friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) (quoting *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)). "[A] prisoner's

right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)).  Moreover, where there are alternative means of communicating with persons outside of the prison, such as in person visits or mail, the restrictions on telephone use is more likely to be considered reasonable.  *See Almahdi*, 310 F. App'x at 522; *Ortiz-Medina v. Bradley*, No. 19-2133, 2020 WL 362697, at *5 (M.D. Pa. Jan. 22, 2020); *Graf v. Lanigan*, No. 14-2613, 2016 WL 324946, at *2 (D.N.J. Jan. 27, 2016) ("Thus, as Mr. Graf has alternative means to communicate with his family and friends, even those who do not have a landline telephone number, his First Amendment rights are not violated by the NJDOC's policy.").  Dantzler alleges no facts about whether he had alternate means of communicating with family and friends.  Without additional information, the Court is unable to discern a plausible constitutional violation.  *Accord Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (*per curiam*) (holding that conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a claim).

Finally, Dantzler has not asserted a plausible religious freedom claim under the First Amendment.[7]  The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.  *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise

---

[7] Dantzler has not stated a basis for a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because money damages are not available under that statute.  *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

of religion.") (citations omitted).  The threshold question in any First Amendment case is whether the prison's conduct "has substantially burdened the practice of the inmate-plaintiff's religion."  *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (*per curiam*).  Stated another way, the free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden.  *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted).

Dantzler has not specified how his alleged inability to shower or cleanse for two days constituted a substantial burden or otherwise prevented him from practicing his religion.  Again, the allegations are not clear as to whether Dantzler was completely denied access to water for cleansing or drinking.  His current allegations that he has somehow been prevented from freely exercising his religion are conclusory, and the Amended Complaint does not sufficiently state a plausible First Amendment claim.  *See Peele v. Klemm*, 663 F. App'x 127, 130 (3d Cir. 2016) (*per curiam*) (upholding dismissal of First Amendment claim where "Peele failed to provide any factual support for his First Amendment claims beyond general conclusory allegations that DC–819 was inimical to his and possibly other inmates First Amendment rights").

## IV

The Court will grant Dantzler leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Dantzler's claims against the Lehigh County Jail will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they are not plausible.  Because the Court cannot say at this

time that Dantzler cannot cure the defects in his remaining claims against Warden Russell, those claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Dantzler will be granted the option of filing a second amended complaint so that he can "flesh out [his] allegations by . . . explaining in the [second] amended complaint the 'who, what, where, when and why' of [his] claim[s]." *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)).  An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

 */s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**